UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/19/2019
```

----------------------------------------------------------------X

SECURITIES INVESTOR PROTECTION            :
CORPORATION,                              :
                                          :
                              Plaintiff,  :        Adv. Pro. No. 08-1789 (SMB)
                                          :
                - against -               :         SIPA LIQUIDATION
                                          :
BERNARD L. MADOFF INVESTMENT              :       (Substantively Consolidated)
SECURITIES LLC,                           :
                                          :
                             Defendant.   :
----------------------------------------------------------------X
In re:                                    :
BERNARD L. MADOFF,                        :
                                          :
                               Debtor.    :
----------------------------------------------------------------X
SUSANNE STONE MARSHALL, ADELE             :
FOX, MARSHA PESHKIN, and RUSSELL OASIS,   :
                                          :
                    Plaintiffs/Appellants,:
                                          :
                - against -               :
                                          :        Adv. Pro. No. 15-1293 (SMB)
CAPITAL GROWTH COMPANY; DECISIONS,        :
INCORPORATED; FAVORITE FUNDS; JA          :       Appeal No. 17-CV-2230 (VSB)
PRIMARY LIMITED PARTNERSHIP; JA SPECIAL   :
LIMITED PARTNERSHIP; JAB PARTNERSHIP;     :       **OPINION & ORDER**
JEMW PARTNERSHIP; JF PARTNERSHIP; JFM     :
INVESTMENT COMPANIES; JLN PARTNERSHIP;    :
JMP LIMITED PARTNERSHIP; JEFFRY M.        :
PICOWER SPECIAL COMPANY; JEFFRY M.        :
PICOWER, PC.; THE PICOWER FOUNDATION;     :
THE PICOWER INSTITUTE OF MEDICAL          :
RESEARCH; THE TRUST F/B/O GABRIELLE H.    :
PICOWER; BARBARA PICOWER, *individually,* :
*and as Executor of the Estate of Jeffry M. Picower,* :
*and as Trustee for the Picower Foundation and for* :
*the Trust f/b/o Gabrielle H. Picower*; and IRVING :
H. PICARD, *Trustee for the Liquidation of Bernard* :
*L. Madoff Investment Securities LLC*,     :
                                          :
                  Defendants/Appellees.   :
----------------------------------------------------------------X

Appearances:

Helen Davis Chaitman
Lance Gotthoffer
Chaitman LLP
New York, NY
*Counsel for Plaintiffs/Appellants*

Gary Stein
Jennifer Marie Opheim
Marcy Ressler Harris
Michael Yongha Kwon
Schulte Roth & Zabel LLP
New York, NY

Mark David Richardson
Labaton Sucharow LLP
Wilmington, DE
*Counsel for Defendants/Appellees Capital Growth Company, Decisions Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, and Barbara Picower*

David J. Sheehan
Ferve Emine Ozturk Khan
Baker & Hostetler LLP
New York, NY
*Counsel for Defendant/Appellee Irving H. Picard*

VERNON S. BRODERICK, United States District Judge:

   This bankruptcy appeal arises out of the third attempt by a group of former customers of

Bernard L. Madoff Investment Securities LLC ("BLMIS") to circumvent a permanent injunction

entered by the United States Bankruptcy Court for the Southern District of New York, in

connection with its approval of a $7.2 billion settlement between the Trustee of BLMIS and a

number of parties affiliated with Jeffry M. Picower (the "Picower Parties" and, together with the

Trustee, "Appellees").

   Appellants—former BLMIS customers and now creditors of the BLMIS estate—seek

review in this Court after the Bankruptcy Court denied their application for a declaration that

their proposed Third Amended Complaint (the "*Fox III* Complaint") against the Picower Parties

asserted claims that were not barred by the permanent injunction.  Because I agree with the

Bankruptcy Court's determination that the *Fox III* Complaint asserts claims that are duplicative

and derivative of claims previously brought by the Trustee, I conclude that the *Fox III* Complaint

violates the permanent injunction and I AFFIRM the decision of the Bankruptcy Court.

**I.**      **Factual Background and Procedural History**[1]

    **A.**      ***Madoff's Ponzi Scheme and BLMIS's Bankruptcy***

This appeal arises from the Ponzi scheme devised by Bernard L. Madoff ("Madoff"), the

ensuing bankruptcy of Bernard L. Madoff Investment Securities LLC, and the resulting

bankruptcy proceedings.  A detailed discussion of Madoff's Ponzi scheme and the events giving

rise to the bankruptcy can be found in several prior decisions issued by the Bankruptcy Court,

but in brief, the scheme operated as follows:

> Madoff claimed he was investing BLMIS's customers' funds in stocks and then
> hedging with option trades.   In reality, Madoff never invested any of the
> funds.  Instead, BLMIS generated fictitious account statements reflecting trades
> that were never actually completed and profits that were never actually
> generated.  Because BLMIS was not actually generating profit, it paid customers
> who  withdrew  funds  with  the  proceeds  of  other  customers'
> investments.  Eventually, BLMIS was unable to meet its customers' demands for
> withdrawals, and the scheme collapsed.

*A & G Goldman P'ship v. Picard* ("*Goldman III App. Ct.*"), 739 F. App'x 679, 681 (2d Cir.

2018) (summary order) (internal citations omitted); *see also In re Bernard L. Madoff Inv. Sec.*

*LLC*, 424 B.R. 122, 135 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011).

---

[1] The facts in this section are recited only to provide background information for this decision and are not intended
to be, and should not be viewed as, findings of fact.

After Madoff's scheme came to light in December 2008, BLMIS entered into liquidation proceedings pursuant to the Securities Investor Protection Act ("SIPA").  *See Marshall v. Capital Growth Co.* ("Bankr. Op."), 568 B.R. 203, 205 (Bankr. S.D.N.Y. 2017).  Irving H. Picard (the "Trustee"), as Trustee for the liquidation of BLMIS, determined that each BLMIS customer's claims against the bankruptcy estate would be calculated based on the "Net Investment Method," crediting the amount of cash the customer deposited into his BLMIS account, less any amounts withdrawn from it.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233 (2d Cir. 2011).  Under the Net Investment Method, a customer's recovery was limited to the amount of his investment—that is, he could not recover the false profits that BLMIS had reported on his customer statements.  Some customers, including Appellants in the current action, argued that the Trustee should also return their fictitious profits to them; however, the Bankruptcy Court upheld the Trustee's use of the Net Investment Method.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 424 B.R. at 135.  The Second Circuit, in turn, affirmed the Bankruptcy Court's decision, concluding that permitting customers to collect their false profits would "have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations."  *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 235.[2]

---

[2] With the exception of Russell Oasis, each of the Appellants here (i.e., Adele Fox, Susanne Stone Marshall, and Marsha Peshkin) filed customer claims against the BLMIS estate, which were resolved through the claims resolution process.  (App'x 1529–30.)  (References to "App'x" refer to the appendix submitted by Appellees on August 24, 2017, pursuant to Fed. R. Bankr. P. 8018(b)(2).)  Marshall's and Peshkin's customer claims were satisfied in full, (*id.* at 1530); Fox's claims, however, were denied as both Fox and Oasis are "net winners"—that is, "customers who withdrew more money than they deposited with BLMIS."  *Fox v. Picard* ("*Fox II Dist. Ct.*"), 531 B.R. 345, 349 (S.D.N.Y. 2015) (Koeltl, J.).

### B.    *Trustee's Suit Against Picower and the Permanent Injunction*

In May 2009, the Trustee initiated an adversary proceeding against Jeffry Picower (now deceased) and the Picower Parties to recover $7.2 billion that BLMIS had fraudulently transferred to the Picower Parties between 1995 and 2008, as part of the Ponzi scheme.  Bankr. Op., 568 B.R. at 205.  The Trustee's complaint alleged that the Picower Parties were aware of the Ponzi scheme, were "complicit[] in [Madoff's] fraud," and actively participated in the scheme by directing BLMIS employees to create fictitious trading records in their accounts. (App'x 869; Bankr. Op., 568 B.R. at 205.)  To support the contention that Picower had knowledge of Madoff's fraud, the complaint cited Picower and Madoff's close relationship, Picower's understanding of BLMIS's operations, and the "implausibly high rates of return" that Picower received on his purported investments.  *Goldman III App. Ct.*, 739 F. App'x at 681.  The Trustee and the Picower Parties (along with the Government) ultimately entered into a global settlement agreement, pursuant to which the Picower Parties agreed to forfeit $7.235 billion, to be distributed to BLMIS victims.  (App'x 1125.)  On January 13, 2011, the Bankruptcy Court approved the settlement and issued a permanent injunction, which defines the parties against whom it applies.  The injunction provides:

> any BLMIS customer or creditor of the BLMIS estate who filed or could have filed a claim in the liquidation, anyone acting on their behalf or in concert or participation with them, or anyone whose claim in any way arises from or is related to BLMIS or the Madoff Ponzi scheme, is hereby permanently enjoined from asserting any claim against the Picower BLMIS Accounts or the Picower Releasees that is duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee against the Picower BLMIS Accounts or the Picower Releasees.

Bankr. Op., 568 B.R. at 205–06.

###### C.   *Prior Attempts to Sue the Picower Parties*

Both prior to and since the issuance of the permanent injunction, two sets of putative

class action plaintiffs—the Fox Parties (Appellants here) and the Goldman Parties[3]—have

repeatedly attempted to assert non-derivative claims against the Picower Parties to recover their

lost investments, including their falsely reported profits.  Bankr. Op., 568 B.R. at 206.  The Fox

Parties and the Goldman Parties have now each submitted three versions of their respective

complaints, which allege that Picower constituted a "control person" of BLMIS under § 20(a) of

the Securities Exchange Act of 1934, 15 U.S.C. § 78t, thereby rendering Picower jointly and

severally liable for BLMIS's fraud.[4]  Courts, however, have uniformly concluded that each

successive version of the Fox and Goldman complaints merely assert claims that are duplicative

or derivative of those claims brought by the Trustee on behalf of BLMIS.  These complaints

have resulted in a total of eleven decisions from the Bankruptcy Court, other courts within this

district, and the Second Circuit, concluding that the permanent injunction bars the Goldman and

Fox complaints.[5]

---

[3] The Goldman Parties include A & G Goldman Partnership and Pamela Goldman, individually and on behalf of a class of similarly situated plaintiffs.

[4] The Fox Parties' complaints are:  *Fox v. Picower*, No. 10-cv-80252 (S.D. Fla. Mar. 15, 2010), ECF No. 5, and *Marshall v. Picower*, No. 10-cv-80254 (S.D. Fla. Mar. 15, 2010), ECF No. 7 (collectively, "*Fox I* Complaint"); *Marshall v. Capital Growth Co.*, No. 10-cv-80252 (S.D. Fla. Feb. 5, 2014), ECF No. 28, Ex. 2 ("*Fox II* Complaint" or "*Fox II* Compl."); *Marshall v. Capital Growth Co.*, Adv. Pro. No. 15-1293 (Bankr. S.D.N.Y. Aug. 28, 2015), ECF No. 1-1 ("*Fox III* Complaint" or "*Fox III* Compl.").  The Goldman Parties' complaints are:  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Dec. 13, 2011), ECF No. 4580, Ex. A, and *Sec. Inv'r Prot. Corp.*, Adv. Pro. No. 08-1789, ECF No. 4581, Ex. A (collectively, "*Goldman I* Complaint"); *Goldman v. Capital Growth Co.*, No. 14-cv-80012 (S.D. Fla. Jan. 6, 2014), ECF No. 1, Ex. A ("*Goldman II* Complaint"); and *Goldman v. Capital Growth Co.*, No. 14-cv-81125 (S.D. Fla. Aug. 28, 2014), ECF No. 1 ("*Goldman III* Complaint").

[5] These decisions are:  *Picard v. Fox* ("*Fox I Bankr. Ct.*"), 429 B.R. 423 (Bankr. S.D.N.Y. 2010); *Fox v. Picard* ("*Fox I Dist. Ct.*"), 848 F. Supp. 2d 469 (S.D.N.Y. 2012) (Koeltl, J.); *Marshall v. Picard* ("*Fox I App. Ct.*"), 740 F.3d 81 (2d Cir. 2014); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* ("*Goldman I Bankr. Ct.*"), 477 B.R. 351 (Bankr. S.D.N.Y. 2012); *A & G Goldman P'ship v. Picard* ("*Goldman I Dist. Ct.*"), No. 12 Civ. 6109 (RJS), 2013 WL 5511027 (S.D.N.Y. Sept. 30, 2013) (Sullivan, J.); *Picard v. Marshall* ("*Fox II/Goldman II Bankr. Ct.*"), 511 B.R. 375 (Bankr. S.D.N.Y. 2014); *Fox II Dist. Ct.*, 531 B.R. 345; *Picard v. A & G Goldman P'ship* ("*Goldman III Bankr. Ct.*"), 546 B.R. 284 (Bankr. S.D.N.Y. 2016); *A & G Goldman P'ship v. Picard* ("*Goldman III Dist. Ct.*"), 565 B.R. 510 (S.D.N.Y. 2017) (Woods, J.); *Goldman III App. Ct.*, 739 F. App'x 679; and Bankr. Op.,

These decisions have identified two primary deficiencies in the Fox and Goldman complaints.  First, the complaints rest on allegations of Picower's misconduct with respect to his own accounts.  Picower's actions—specifically, the withdrawal of billions of dollars in customer funds from his BLMIS accounts—"harmed every BLMIS investor (and BLMIS itself) in the same way":  "the very essence of the allegations against the Picower defendants is that they paid themselves out of assets that comprised other customers' accounts, thereby diminishing the value of BLMIS."  *Fox I Dist. Ct.*, 848 F. Supp. 2d at 480.  Second, claims that Picower controlled Madoff's or BLMIS's activities in any way were purely "conclusory" and insufficient to support a § 20(a) control person claim.  *See Goldman I Dist. Ct.*, 2013 WL 5511027, at *6 ("Apart from a few conclusory legal assertions that list the elements of a control person claim, all of the allegations in the Complaint refer exclusively to the Picower Defendants' fraudulent withdrawals.").

## D.   *The* Fox III *Complaint*

On August 29, 2015, after failing to persuade any court that the *Fox I* or *Fox II* Complaints stated claims that were not duplicative or derivative of claims brought by the Trustee against the Picower Parties,[6] Appellants instituted this adversary proceeding by filing a Complaint for Declaratory Judgment against the Picower Parties and the Trustee, and attaching the proposed *Fox III* Complaint.  *Marshall*, Adv. Pro. No. 15-1293, ECF Nos. 1, 1-1.  The *Fox III* Complaint asserts six claims against Appellees, including a claim for control person liability

---

568 B.R. 203 (decision below, holding that permanent injunction bars *Fox III* Complaint).

[6] On January 13, 2014, the Second Circuit affirmed the application of the permanent injunction to bar the *Fox I* Complaint.  *See Fox I App. Ct.*, 740 F.3d 81, *aff'g Fox I Dist. Ct.*, 848 F. Supp. 2d 469.  The Fox Parties also appealed the subsequent rejection of the *Fox II* Complaint but ultimately abandoned that appeal.  *See Fox II Dist. Ct.*, 531 B.R. 345 (affirming order enjoining Fox Parties from filing *Fox II* Complaint), *aff'g Fox II/Goldman II Bankr. Ct.*, 511 B.R. 375; *Marshall v. Picard*, No. 15-1869 (2d Cir. Sept. 25, 2015), ECF No. 70 (dismissing appeal after no opening brief was filed).

under § 20(a) of the Securities Exchange Act, as well as claims for violations of both federal and

Florida RICO statutes, and Florida common law.  (*Fox III* Compl. ¶¶ 111–97.)[7]  In substance, the

*Fox III* Complaint alleges that Picower exercised control over BLMIS by:

1. directing Madoff to make a margin loan of $6 billion, which was actually a theft of BLMIS funds, to one of the Picower Party's BLMIS accounts, (¶¶ 62–64);

2. agreeing to be listed as a counterparty on BLMIS' fake option trades to create the appearance of legitimate trading, (¶¶ 65–70);

3. loaning BLMIS $76 million in 1992 when a BLMIS feeder fund—Avellino & Bienes—was under SEC investigation and needed funds from BLMIS to repay Avellino & Bienes investors, (¶¶ 71–75);

4. loaning BLMIS $125 million in 2006 to fund BLMIS customer redemptions, (¶¶ 76–78); and

5. causing Madoff and other BLMIS employees to book phony transactions in the Picower Parties' BLMIS accounts to manufacture fictitious gains (or fictitious losses to reduce tax liabilities).  (¶¶ 82–89.)

Bankr. Op., 568 B.R. at 207.  Appellees opposed the declaratory judgment motion and argued

that the *Fox III* Complaint simply realleges those claims featured in earlier, failed iterations of

complaints filed by the Fox Parties.  *See Marshall*, Adv. Pro. No. 15-1293, ECF Nos. 23, 25.

## II.   **Opinion Below**

On March 7, 2017, the Bankruptcy Court issued a decision denying Appellants' motion

for a declaratory judgment and concluding that the *Fox III* Complaint violates the permanent

injunction.[8]  Bankr. Op., 568 B.R. 203.  The Bankruptcy Court examined in detail the ways in

---

[7] Courts have previously found all six of these claims to be derivative.  *See, e.g.*, *Fox II Dist. Ct.*, 531 B.R. at 347, 354.  In this appeal, Appellants only make arguments regarding the viability of their § 20(a) control person claim. Therefore, I deem Appellants' remaining claims abandoned and limit my analysis to their § 20(a) claim.  *See, e.g.*, *United States v. Joyner*, 313 F.3d 40, 44 (2d Cir. 2002) ("It is well established that 'an argument not raised on appeal is deemed abandoned and lost . . . .'" (quoting *United States v. Babwah*, 972 F.2d 30, 34–35 (2d Cir. 1992)).

[8] Appellants also sought a declaration that their claims do not violate the automatic stay; however, the Bankruptcy Court did not reach this issue because it found that the permanent injunction independently bars Appellants' claims. *See* Bankr. Op., 568 B.R. at 217 n.16.

which the *Fox III* Complaint differs from prior iterations of the Fox complaint.  First, the court

analyzed two sets of allegations that are unique to the *Fox III* Complaint:  (1) that, when BLMIS

was in need of liquidity, Picower made two loans to BLMIS totaling approximately $200 million

(the "propping-up allegations"); and (2) that Picower permitted BLMIS to list his name in

BLMIS's records as a counterparty for fictitious options trades, thereby lending credibility to

BLMIS's fraudulent representations that it was engaging in a high volume of options trading (the

"counterparty allegations").  *Id.* at 211.  The Bankruptcy Court determined, however, that the

propping-up and counterparty allegations describe conduct that was "incident to Picower's

fraudulent withdrawals," and that merely served to push BLMIS further into bankruptcy, thereby

"harm[ing] every BLMIS investor (and BLMIS itself) in the same way."  *Id.* at 212–13 (citing

*Goldman III Dist. Ct.*, 565 B.R. at 524).

 The Bankruptcy Court also considered two new sources of information that Appellants

contend "infuse[] the [*Fox III* Complaint]'s allegations with the particularity that the Courts had

previously found lacking."  *Id.* at 213.  First, Appellants attached as an exhibit to the *Fox III*

Complaint the transcript of a deposition of Madoff taken in connection with the case, *In*

*re Optimal U.S. Litigation*, No. 10-cv-4095 (SAS) (S.D.N.Y.) (the "Madoff Deposition").

Bankr. Op., 568 B.R. at 208.  Second, Appellants relied upon a declaration Madoff submitted in

another action relating to whether a different BLMIS customer had made withdrawals from his

BLMIS account (the "Madoff Declaration").[9]  *See id.* at 216.  With respect to these documents,

the Bankruptcy Court held that Appellants had mischaracterized Madoff's deposition testimony,

and that the statements in the Madoff Declaration were so conclusory and lacking in specificity

---

[9] The "Madoff Declaration" or "Madoff Decl." refers to the Declaration of Bernard L. Madoff, dated November 17, 2015, and filed in the adversary proceeding below on January 14, 2016.  *Marshall*, Adv. Pro. No. 15-1293, ECF No. 31-2.

that they provided no support for the similarly vague and conclusory allegations contained in the *Fox III* Complaint.  *Id.*  The Bankruptcy Court then denied Appellants' request for a declaration that the claims asserted in the *Fox III* Complaint are not barred by the permanent injunction, and dismissed the action.  *Id.* at 217.

On March 28, 2017, Appellants filed a notice of appeal from the Bankruptcy Court's denial of their motion for a declaratory judgment.  (Doc. 1.)  Appellants filed their opening brief on June 23, 2017.  (Doc. 19.)  On August 24, 2017, both the Trustee and the Picower Parties filed briefs in opposition.  (Docs. 22 and 23, respectively.)  Appellants submitted their reply brief on September 25, 2017.  (Doc. 26.)  On July 2, 2018, the Trustee filed a notice of supplemental authority relating to the Second Circuit's June 27, 2018 *Goldman III* decision, *Goldman III App. Ct.*, 739 F. App'x 679, which affirmed the lower courts' conclusion that the *Goldman III* Complaint violated the permanent injunction and automatic stay.  (Doc. 31.)  Appellants responded to that notice on July 3, 2018.  (Doc. 32.)

### III.   <u>Standard of Review</u>

A district court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  On such an appeal, a district court reviews the bankruptcy court's findings of fact for clear error, and any conclusions of law de novo.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).  A bankruptcy court's determination that a claim is derivative is reviewed *de novo*.  *See In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) ("[W]e review *de novo* the District Court's conclusion that the . . . Plaintiffs' claims are in fact derivative claims . . . .").[10]

---

[10] In *Goldman III*, the Second Circuit acknowledged "an apparent tension in [its] case law regarding the standard of review for the bankruptcy court's determination that the claim at issue in the complaint is derivative of the Trustee's claims."  739 F. App'x at 683 n.1.  In *Fox I*, the Second Circuit had applied a more lenient standard of review, noting that the relevant "standard of review for the grant of a permanent injunction, including an anti-suit injunction,

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). The district court may not consider evidence outside the record.[11] *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008). Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012); *In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994).

## IV.   Discussion

The primary question before me is whether the Bankruptcy Court correctly determined that the claims set forth in the *Fox III* Complaint are duplicative and/or derivative of claims that the Trustee asserted, or could have asserted, against the Picower Parties. While Appellants have labeled the claim at issue as a § 20(a) claim for control person liability, I must examine whether Appellants assert a "bona fide" control person claim, *Fox II Dist. Ct.*, 531 B.R. at 353, or whether they instead bring "a disguised fraudulent transfer claim that is derivative of the

---

is abuse of discretion." 740 F.3d at 87 (internal quotation marks omitted). However, as the court acknowledged in *Goldman III*, *In re Tronox* explained that "the purely legal question of whether the claims at issue were derivative . . . was subject to *de novo* review." 739 F. App'x at 683 n.1 (citing *In re Tronox*, 855 F.3d at 99 & n.20). The *Goldman III* court determined it "need not resolve this apparent tension, however, because [it] would affirm the bankruptcy court under the more demanding *de novo* review." *Id.* Out of an abundance of caution, I also apply the more demanding *de novo* standard here.

[11] In conjunction with the filing of their reply brief, Appellants sought leave to file under seal a draft declaration by Madoff, (Doc. 25); Appellees oppose the request, on the ground that the document was not made part of the record below, (Doc. 27). On August 19, 2016, the draft Madoff declaration was "submitted confidentially" to the Bankruptcy Court in the underlying bankruptcy proceeding, *Sec. Inv'r Prot. Corp.*, Adv. Pro. No. 08-1789. (Doc. 25.) Appellants, however, did not make the draft Madoff declaration part of the record in this adversary proceeding, even though the document was in their possession more than six months prior to the Bankruptcy Court's issuance of the decision below. In any event, the draft declaration appears redundant of other documents—e.g., the Madoff Declaration, *see supra* n.9—that are part of the record below, so there is no need for me to consider it. For these reasons, Appellants' request to submit the draft Madoff declaration, and to do so under seal, (Doc. 25), is DENIED.

Trustee's fraudulent transfer claims." *Goldman III App. Ct.*, 739 F. App'x at 684.

### A.    *Applicable Law*

Derivative claims "arise from harm done to the estate" and "seek relief against third

parties that pushed the debtor into bankruptcy." *Fox I App. Ct.*, 740 F.3d at 89.  In other words,

a claim is derivative if it is "based upon a secondary effect from harm done to [the debtor]." *Id.*

(internal quotation marks omitted).  "[A] debtor estate's claims against a third party and an estate

creditor's claims against the same party are not duplicative or derivative merely because they are

based on the same facts," *Goldman I Dist. Ct.*, 2013 WL 5511027, at *4; however, where the

creditor's claim "is a general one, with no particularized injury arising from it, and if that claim

could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim,

and the creditors are bound by the outcome of the trustee's action." *In re Tronox*, 855 F.3d at

100 (citing *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)).

By contrast, where, "creditors have a claim for injury that is particularized as to them, they are

exclusively entitled to pursue that claim." *Id.* at 99.

"In distinguishing derivative claims from particularized claims exclusive to individual

creditors, labels are not conclusive, since plaintiffs often try, but are not permitted, to plead

around a bankruptcy." *Id.* at 100; *see also Goldman I Dist. Ct.*, 2013 WL 5511027, at *6

("[S]uch a formalistic approach would allow parties to easily plead around the protections of the

Bankruptcy Code by deceptively labeling their claims."); *Fox I Dist. Ct.*, 848 F. Supp. 2d at 482

("To the extent that the Appellants urge that the claims asserted . . . are not property of the estate

by virtue of the names of the causes of action asserted, this argument is unpersuasive.").  Courts

must therefore be "wary of putting form over substance." *In re Tronox*, 855 F.3d at 100.

Section 20(a) of the Securities Exchange Act of 1934 provides a cause of action against

anyone who exercises control over individuals who violate the securities laws.  Pursuant to

§ 20(a),

> Every person who, directly or indirectly, controls any person liable under any
> provision of this chapter or of any rule or regulation thereunder shall also be liable
> jointly and severally with and to the same extent as such controlled person to any
> person to whom such controlled person is liable . . . , unless the controlling person
> acted in good faith and did not directly or indirectly induce the act or acts
> constituting the violation or cause of action.

15 U.S.C. § 78t(a).  The elements of a § 20(a) claim are "(1) a primary violation of the securities

laws by the controlled person, (2) control of the primary violator by the defendant, and (3) that

the defendant was, in some meaningful sense, a culpable participant in the controlled person's

fraud."  *Goldman III App. Ct.*, 739 F. App'x at 685 (quoting *ATSI Commc'ns, Inc. v. Shaar*

*Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).  SEC regulations define "control" as "the

possession, direct or indirect, of the power to direct or cause the direction of the management and

policies of a person, whether through the ownership of voting securities, by contract, or

otherwise."  17 C.F.R. § 230.405; *see also Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th

Cir. 1996) ("[A] defendant is liable as a controlling person under section 20(a) if he or she had

the power to control the general affairs of the entity primarily liable . . . and had the requisite

power to directly or indirectly control or influence the specific corporate policy which resulted in

the primary liability." (internal quotation marks omitted)); *Paracor Fin., Inc. v. Gen. Elec.*

*Capital Corp.*, 96 F.3d 1151, 1155,1163 (9th Cir. 1996) (concluding that defendant was not a

"control person" where defendant "did not exercise control over the 'management and policies'

of [the company], nor did it direct [the company's] day-to-day affairs").

### B.    *Application*

Appellants contend that the Picower Parties are liable under § 20(a) because (1) BLMIS

was the primary violator of the securities laws, (2) Picower controlled BLMIS, and (3) Picower

was a culpable participant in BLMIS's fraud.  As Appellants explain, the *Fox III* Complaint

seeks damages "resulting from [Appellants'] reliance upon misrepresentations made to

[Appellants] by Madoff, while he was acting under the direct or indirect control of Picower."

(Appellants' Br. 5.)[12]  Appellants are correct that, in order to plead a *bona fide* control person

claim, the *Fox III* Complaint need not allege that Picower made direct misrepresentations to

them.  (*Id.* at 21.)  However, to avoid the permanent injunction, the *Fox III* Complaint must "give

rise to a colorable claim that Picower controlled BLMIS" in its misrepresentations.  *Goldman III*

*App. Ct.*, 739 F. App'x at 685; *see also Fox II Dist. Ct.*, 531 B.R. at 352 (finding no "'bona fide'

Section 20(a) claim" where appellants had "not made particularized allegations about any

representations made by the Picower parties or direct involvement of the Picower parties in

misrepresentations by Madoff").

The vast majority of the allegations in the *Fox III* Complaint were copied, almost

verbatim, from earlier iterations of the Fox complaint, each of which was barred by the

permanent injunction.[13]  (*See* Picower Br. 5 (noting that 170 of 197 paragraphs of the *Fox III*

Complaint are repeated from earlier versions of the Fox complaint).)[14]  In addition, most of the

new allegations in the *Fox III* Complaint mirror those allegations in the *Goldman III* complaint,

on which the Second Circuit has now opined.  *See Goldman III App. Ct.*, 739 F. App'x 679.

There are now a total of eleven different decisions in which two bankruptcy court judges, three

district court judges, and the Second Circuit, have concluded that these allegations support only

---

[12] "Appellants' Br." refers to the Appellants' Brief, filed June 23, 2017, (Doc. 19).

[13] The *Fox III* Complaint asserts the same six causes of action—including a § 20(a) control person claim—against the Picower Parties as earlier iterations of the Fox complaint.  (*Compare Fox III* Compl. ¶¶ 111–97, *with Fox II* Compl. ¶¶ 101–93.)  Thus, not only are many of the allegations in the *Fox III* Complaint copied verbatim from prior, enjoined versions of the Fox complaint, but the causes of action in the *Fox III* Complaint are also identical to those set forth in the earlier versions.

[14] "Picower Br." refers to the Brief of Appellees the Picower Parties, filed August 24, 2017, (Doc. 23).

derivative causes of action.[15]  The repeating and repackaging in the *Fox III* Complaint of the allegations from complaints found wanting by every court to have considered them simply are not persuasive evidence of the existence of non-duplicative and/or non-derivative claims. Therefore, I likewise find that the allegations in the *Fox III* Complaint do not give rise to a colorable § 20(a) control person claim, and once again amount "only to a derivative, fraudulent transfer claim."  *Id.* at 685.

### 1.  Propping-Up and Counterparty Allegations

The *Fox III* Complaint differs from prior iterations of the Fox complaint in its inclusion of allegations that Picower made substantial loans to "prop up" BLMIS's business and allowed BLMIS to list him as an options counterparty on various transactions.  Both the propping-up and counterparty allegations, however, were included in the *Goldman III* Complaint.  As the opinion below correctly notes, "[t]he allegations in the [*Fox III* Complaint] and the [*Goldman III*] Complaint respecting these two issues are practically identical; in fact, the [*Fox III* Complaint] lifts much of the language from the [*Goldman III*] Complaint."  Bankr. Op., 568 B.R. at 211.

After the parties submitted their briefs in the instant appeal, the Second Circuit issued its decision in *Goldman III*, 739 F. App'x 679, affirming the district court's ruling that—despite the addition of the propping-up and counterparty allegations to bolster the Goldman Parties' § 20(a) claim—the *Goldman III* Complaint was "functionally similar to prior complaints held to have been barred by the Permanent Injunction," and, as a result, should also be enjoined.  *See Goldman III Dist. Ct.*, 565 B.R. at 523.  In evaluating whether the *Goldman III* Complaint had set forth a "colorable § 20(a) claim," the Second Circuit affirmed the finding below that neither

---

[15]  *See supra* n.5 for a list of each of the decisions finding that the Goldman and Fox complaints are barred by the permanent injunction.

"the propping-up [n]or the counterparty allegations demonstrate[d] that Picower controlled

BLMIS within the meaning of § 20(a)." *Goldman III App. Ct.*, 739 F. App'x at 685–86.  First,

the Second Circuit found that any allegation "that Picower ever leveraged his allegedly important

role in the scheme to direct the 'management and policies' of BLMIS" was wholly conclusory.

*Id.* at 686 (quoting 17 C.F.R. § 230.405); *see also id.* (noting that it would "not [be] reasonable to

infer," based on the allegations in the *Goldman III* Complaint, that Picower in fact possessed

"that kind of influence" over BLMIS).  Moreover, and specifically with respect to the

counterparty allegations, the Second Circuit determined that those allegations demonstrated

"only Picower's understanding that his participation would result in the dissemination of false

information, not that he actually directed that the dissemination of false information occur or

otherwise had 'control of the primary violator' of the securities laws." *Id.*  Ultimately, the

Second Circuit determined that "the 'control' allegations in the complaint amount[ed] to nothing

more than an attempt to 'plead around' the injunction." *Id.* (quoting *Fox I App. Ct.*, 740 F.3d at

96).

     Although summary orders do not have precedential effect, *see* 2d Cir. R. 32.1.1(a),

because the instant appeal involves a parallel group of former BLMIS customers who have set

forth virtually identical allegations in support of the same cause of action against the same

defendants, I find the Second Circuit's *Goldman III* decision to be highly persuasive and I

wholly agree with the conclusions set forth therein with respect to the *Fox III* Complaint's

propping-up and counterparty allegations.

## 2.  New Sources of Information

     Because the Second Circuit's *Goldman III* decision is directly applicable, I focus the

remainder of my analysis on those few allegations in the *Fox III* Complaint—a handful of

assertions based on the Madoff Deposition and the Madoff Declaration—that distinguish the *Fox III* Complaint from the *Goldman III* Complaint.

The Bankruptcy Court undertook a comprehensive review of the Madoff Deposition before concluding that Madoff's testimony was of no help to Appellants. Bankr. Op., 568 B.R. at 213–16. Appellants challenge the Bankruptcy Court's "pseudo merits analysis" at the pleading stage, and the court's corresponding determination that the *Fox III* Complaint "misstate[s]" Madoff's testimony. (Appellants' Br. 11, 24; Bankr. Op., 568 B.R. at 213.) The Goldman Parties made a similar argument to the district court in *Goldman I*, insisting that the court "must not examine the merits of the [] Complaints since the Complaints ha[d] not yet been filed and the posture of this case d[id] not require a determination of whether the Complaints state a cause of action." *Goldman I Dist. Ct.*, 2013 WL 5511027, at *6. But Appellants "cannot expect that the mere invocation of a non-derivative claim requires the Court to ignore the substance of what their complaints actually allege." *Id.* As Judge Sullivan explained in *Goldman I*, the Goldman Parties "[could] not invoke the posture of this case to shield their Complaints from all scrutiny, since the question before this Court [wa]s whether [plaintiffs'] claims, *as pleaded in the Complaints,* should be allowed to proceed despite the Injunction and automatic stay." *Id.* (emphasis in original). That very same question is presented here, where I must determine whether Appellants' so-called § 20(a) control person claim is, in fact, a fraudulent transfer claim in disguise. *See Goldman III App. Ct.*, 739 F. App'x at 685 (while the inquiry into whether a claim is barred by the permanent injunction does not involve a determination of whether the complaint would survive a 12(b)(6) motion to dismiss, "the substance of the allegations is relevant insofar as it helps us to determine whether, despite the label Appellants attach to it, the claim asserted is actually a disguised fraudulent transfer claim").

In order to determine whether the *Fox III* Complaint pleads a *bona fide* control person claim, I must therefore examine the substance of the *Fox III* Complaint's allegations and consider whether the Madoff Deposition—which Appellants attached as an exhibit to the *Fox III* Complaint—in fact undermines the allegations contained therein.  "Where the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls."  *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008); *see also In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth [] pleadings that . . . are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely . . . ."); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (same).  I must also analyze whether the *Fox III* Complaint's allegations of control are vague and conclusory.  *See Fox II Dist. Ct.*, 531 B.R. at 353 (declining to "opine on whether appellants' section 20(a) claim would survive a motion to dismiss" but concluding that "any allegations purporting to show an injury directly traceable to the Picower Defendants' conduct are too conclusory to present a '*bona fide*' claim independent from the Trustee's action").

As the Bankruptcy Court correctly noted, "Madoff never testified [in his deposition] that Picower devised the Ponzi scheme, participated in its execution, or assisted him in defrauding other BLMIS customers."  Bankr. Op., 568 B.R. at 215.[16]  Rather, Madoff's testimony makes

---

[16] Appellants complain that they have not had an opportunity for discovery and that it was therefore premature for the Bankruptcy Court to make judgments regarding Madoff's deposition testimony.  (Appellants' Br. 22–24.)  But because Appellants attached the Madoff Deposition as an exhibit to the *Fox III* Complaint, it was proper for the Bankruptcy Court to consider it.  *Cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that a court may consider "any written instrument attached to [the complaint] as an exhibit" (internal quotation marks omitted)).  Moreover, it was not error for the Bankruptcy Court to determine that the *Fox III* Complaint alleged only derivative claims without first permitting Appellants the benefit of discovery; in fact, several courts have rejected similar attempts by Appellants to take pre-complaint discovery.  *See, e.g.*, *Marshall v. Madoff*, No. 15 mc 56(JGK), 2015 WL 2183939, at *2, *4 (S.D.N.Y. May 11, 2015) (Koeltl, J.) (denying Fox Parties' petition for pre-complaint discovery and noting that such discovery may not be used to "fish for some ground for bringing suit" (internal quotation marks omitted)).  Finally, it strains credulity that the deposition of Bernie Madoff—the architect of the

clear that the Ponzi scheme was his own doing and that Madoff initiated the fraudulent scheme to recover losses that resulted from his decision in 1987 to "step in" for his principal investors, including Picower, and "take their position on the short side of [an] option" with another BLMIS client, a French private investment bank.  (*Fox III* Compl., Ex. A 32:8-33:10, 37:1-12, 38:5-40:8, 46:21-47:4.)  Stepping in for the investors placed Madoff at risk if the market went up, and when it did, Madoff owed "a couple of billion dollars."  (*Id.* at 49:7-24, 52:17-23.)  Although Picower and the other investors had assured Madoff that they would indemnify him for any losses he suffered, they did not honor that commitment, forcing Madoff to look elsewhere to recoup his losses.  (*Id.* at 47:8-48:18, 52:9-53:12.)

The only statement in the Madoff Deposition that directly implicates Picower is Madoff's testimony that Picower was "complicit in the crime."  (*Id.* at 108:4-17.)  However, read in context, this statement clearly refers to Picower's complicity in tax fraud with respect to his own accounts.  Indeed, Appellants acknowledge as much.  (*See* Appellants' Br. 6 ("In the deposition, . . . Madoff explicitly identified Jeffry Picower (along with two others) as being complicit in his crimes 'because they had violated tax laws based upon what I discussed with them and other things that I knew that they were doing with people in my firm, bookkeepers, who are all now under investigation.'" (citing *Fox III* Compl., Ex. A 108)).)  And that allegation of tax fraud is not new—in the *Fox II* Complaint, Appellants asserted that "Picower . . . demanded that BLMIS manufacture fictitious losses for the Picower Parties . . . in order to reduce their state and federal tax liabilities."  (*Fox II* Compl. ¶ 47.)  Courts have ruled that those allegations relate to the Picower Parties' manipulation of "their *own* BLMIS accounts, and are thus duplicative of the

---

Madoff Ponzi scheme—would not result in non-conclusory evidence of Picower's involvement as a control person in that scheme, if in fact Picower exercised such influence over Madoff or BLMIS.

Trustee's fraudulent transfer claims." *Fox II Dist. Ct.*, 531 B.R. at 353 (emphasis in original)

(internal quotation marks omitted) (citing ¶ 47 of the *Fox II* Complaint).  Even assuming

arguendo that Madoff had testified to Picower's "complicity" in defrauding other BLMIS

customers—which he did not—courts in this district have concluded that "even significant

participation in a primary violator's scheme to defraud is not equivalent to directing the primary

violator to engage in that scheme," and that such conduct is therefore insufficient to establish

control person liability.  *Floyd v. Liechtung*, No. 10 CIV. 4254 PAC, 2013 WL 1195114, at *6

(S.D.N.Y. Mar. 25, 2013) (quoting *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 646

(S.D.N.Y. 2004)).

Finally, Appellants contend that the Madoff Declaration adds particularity to the *Fox III*

Complaint's allegations.  The Madoff Declaration was prepared in connection with an unrelated

application by a former BLMIS customer, and it addresses whether that customer had made

withdrawals from his BLMIS account.  In the declaration, Madoff takes the unequivocal position

that stock brokers only send checks to customers when those customers specifically request a

withdrawal, (Madoff Decl. ¶ 2), and that any such request must be submitted in writing, (*id.* ¶ 3).

The Madoff Declaration then abruptly states, without offering any context, that "[p]ost 1990, I

was put under enormous financial pressure by Jeffry Picower, who created the fraud I

perpetrated and who was, by far, the primary beneficiary of the fraud."  (*Id.* ¶ 4.)  Contrary to

Appellants' assertions, this extraneous, cryptic comment that Picower "created" Madoff's fraud

is the epitome of a "bare, conclusory statement."  (Appellants' Br. 26.)  Such "general,

conclusory allegations that Picower controlled BLMIS," even coming from Madoff himself, do

not supply the *Fox III* Complaint with the particularity necessary to avoid the permanent

injunction.  *Goldman III App. Ct.*, 739 F. App'x at 682; *see also Goldman I Dist. Ct.*, 2013 WL

5511027, at *6 (rejecting the "few conclusory legal assertions that list the elements of a control person claim").  Moreover, I agree with the Bankruptcy Court's assessment that Madoff's comment that Picower was the "primary beneficiary of the fraud," (Madoff Decl. ¶ 4), is "just another way of saying that [Picower] withdrew more fictitious profits from BLMIS than anyone else."  Bankr. Op., 568 B.R at 216–17.  It is well established that claims pleading "nothing more than that the Picower Defendants fraudulently withdrew money from BLMIS" are derivative.  *Goldman I Dist. Ct.*, 2013 WL 5511027, at *7.

Even when considered in conjunction with the Madoff Deposition and the Madoff Declaration, the *Fox III* Complaint "lacks [] examples of Picower actually using whatever influence he may have obtained . . . to direct the management and policies of BLMIS."  *Goldman III App. Ct.*, 739 F. App'x at 686 n.3.  The *Fox III* Complaint therefore contains no *bona fide* § 20(a) claim.  The *Fox III* Complaint also fails to identify any other legal theory under which Picower's alleged conduct directly injured Appellants.  Specifically, the *Fox III* Complaint is devoid of any allegations that Picower made direct misrepresentations to BLMIS customers; in fact, Appellants appear to acknowledge that their claims result from their "reliance upon misrepresentations made to [Appellants] by Madoff."  (Appellants' Br. 5.)  For this reason, the cases that Appellants invoke are of no avail.  In *In re Seven Seas Petroleum, Inc.*, plaintiff bondholders alleged that defendant—a secured creditor—knowingly utilized material misrepresentations "to induce potential investors and existing investors in the unsecured notes to either acquire interests in or to refrain from selling interests in the unsecured notes."  522 F.3d 575, 581 (5th Cir. 2008).  In other words, the defendant had made direct misrepresentations to investors.  The same is true of the other cases on which Appellants rely.  *See, e.g.*, *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1043 (2d Cir. 1986) (fraud claim not derivative where

plaintiff "alleged with particularity that misrepresentations of facts . . . were made by [defendant] in furtherance of a conspiracy to defraud" plaintiff); *Medsker v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) (claims were direct where complaint "state[d] that the defendants made intentional misrepresentations to these plaintiffs and thereby fraudulently induced them to invest their money").

In sum, despite Appellants' attempts to "thread the eye of the needle outlined by the prior decisions in this line of cases," *Goldman III Dist. Ct.*, 565 B.R. at 523, the legal claims that Appellants assert are, once again, merely fraudulent transfer claims—"the paradigmatic example of a claim that is general to all creditors in bankruptcy." *Goldman III App. Ct.*, 739 F. App'x at 684. For that reason, the Bankruptcy Court correctly concluded that the *Fox III* Complaint violates the permanent injunction and that the action should be dismissed.[17]

## V.   Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.

The Clerk of Court is respectfully directed to terminate the motion pending at Document 25 and to close the case.

SO ORDERED.

Dated: March 19, 2019
      New York, New York

Vernon S. Broderick
United States District Judge

---

[17] Because the Bankruptcy Court below did not deny Appellants leave to replead their claims, Bankr. Op., 568 B.R. at 217, I decline Appellees' request that I enjoin Appellants from filing additional complaints against them. *See Goldman III App. Ct.*, 739 F. App'x at 688 n.5 (rejecting request to enjoin appellants from filing further complaints where the Bankruptcy Court had also declined to impose such an injunction (citing *Goldman III Bankr. Ct.*, 546 B.R. at 306)).